UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

```
_____
                                        )
LIMARY BURGOS-DIAZ,                      )
                                        )
                    Plaintiff,           )
        v.                               )          CIVIL ACTION
                                        )          NO. 3:17-01081-WGY
HOSPITAL HIMA                            )
        SAN PABLO-BAYAMON,               )
Dr. JORGE GARIB,                         )
                                        )
                    Defendants.          )
_____)
```

YOUNG, D.J.[1]                                    November 29, 2017

## MEMORANDUM & ORDER

### I.    INTRODUCTION

Limary Burgos-Diaz ("Burgos-Diaz") filed a complaint
seeking judgment and monetary relief against Hospital HIMA San
Pablo-Bayamon (the "Hospital") and Dr. Jorge Garib ("Dr. Garib")
alleging sexual harassment, gender discrimination, and
retaliation under Title VII federal law and Puerto Rico Law 17
and Law 100.  Burgos-Diaz alleges that during her employment as
an Administrative Assistant at the Hospital from 2011 until
February 2016, Dr. Garib continuously made unwelcome comments
that amounted to sexual harassment and discrimination.
Moreover, Burgos-Diaz alleges that the Hospital not only failed

---

[1] Of the District of Massachusetts, sitting by designation.

appropriately to handle the situation after Burgos-Diaz complained, but also took action that amounted to unlawful retaliation. Burgos-Diaz claims that as a result, she had no other option than to resign from the Hospital.

In a prior hearing on these claims, the Court denied the Hospital's motion to dismiss. The Court granted in part and denied in part Dr. Garib's motion to dismiss. Burgos-Diaz filed an amended complaint, which again set forth three claims of sexual harassment, gender discrimination, and retaliation against Dr. Garib.

Dr. Garib now moves to dismiss the amended complaint in its entirety for failure to state a claim on which relief can be granted. The threshold issue before the Court is whether the applicable statute of limitations bars the Puerto Rico law claims asserted against him. In the amended complaint, Burgos-Diaz alleges conduct that plausibly took place within one year prior to filing the original complaint, so her claims are not barred by the statute of limitations. In addition to this procedural challenge, Dr. Garib argues that the factual allegations set forth in the amended complaint do not state a sufficient claim for relief because (1) they are not overtly sexual and (2) they are speculative or inferential.

## A. Procedural History

On January 19, 2017, Burgos-Diaz filed a complaint asserting three claims against the Hospital and Dr. Garib seeking judgment and monetary relief. Compl., ECF No. 1. On April 17, 2017, after the Court granted numerous continuances, the Hospital moved to dismiss the entire complaint for failure to state a claim on which relief can be granted. Mot. Dismiss Compl., ECF No. 11. The Court granted the Hospital's motion to dismiss on May 9, 2017. Order Granting Mot. Dismiss, ECF No. 17.

On May 10, 2017, Dr. Garib moved to dismiss the complaint against him, Co-Def. Dr. Jorge Garib Bazain's Mot. Dismiss, ECF No. 18, and Burgos-Diaz moved to reconsider the Court's order granting the Hospital's motion to dismiss. Mot. Recons. Order Granting Mot. Dismiss, ECF No. 19. The Court allowed Burgos-Diaz's motion for reconsideration on May 17, 2017. Order Granting Mot. Recons., ECF No. 22; see also Resp. Opp'n Co-Def. Dr. Jorge Garib Bazain's Mot. Dismiss ("Pl.'s Second Opp'n"), ECF No. 25.

After a hearing on July 14, 2017, the Court denied the Hospital's motion to dismiss. Order Mot. Dismiss Failure State Cl. ("Order Mot. Dismiss"), ECF No. 34. The Court granted in part and denied in part Dr. Garib's motion to dismiss. Id. The Court dismissed Burgos-Diaz's Title VII claims against Dr.

Garib, but granted Burgos-Diaz leave to file an amended complaint.  Id.  On August 14, 2017, Burgos-Diaz filed an amended complaint asserting the same three claims against the Hospital and Dr. Garib.  Mot. Leave File First Am. Compl., Ex. 1, First Am. Compl. ("Am. Compl."), ECF No. 36-1.[2]  Dr. Garib again moved to dismiss, the parties have briefed the motion, Resp. Opp'n Leave Am. Compl. ("Dr. Garib's Second Mot. Dismiss"), ECF No. 37; Resp. Opp'n Co-Def. Dr. Jorge Garib Bazain's Mot. Dismiss ("Pl.'s Third Opp'n"), ECF No. 40, and Dr. Garib's motion to dismiss the amended complaint is now before the Court.

**B. Facts Alleged**

Burgos-Diaz worked as an Administrative Assistant at the Hospital from 2011 until her "forced resignation" in February 2016.[3]  Am. Compl. 2-3.  Burgos-Diaz alleges that during and throughout her employment, Dr. Garib -- the "Infectiology Doctor of the Hospital"[4] -- "frequently visited" her working area "in an

_____

[2] Page numbers are referenced in this memorandum instead of paragraph numbers because Burgos-Diaz resets her paragraph numbers halfway through the complaint and the amended complaint.
[3] The Hospital denies that Burgos-Diaz worked as an Administrative Assistant, describing her position as a "ward clerk of the Nursing Department."  Hospital's Answer Compl. ("Hospital's Answer") ¶ 1, ECF No. 35.  The Hospital also denies that Burgos-Diaz left her position in February 2016, stating that the effective date of her "voluntary resignation" was March 11, 2016.  Id. ¶ 5.
[4] The Hospital denies this characterization of Dr. Garib's position.  Hospital's Answer ¶ 3.  The Hospital alleges that Dr.

open, constant and humiliating way." Id. Burgos-Diaz maintains

that Dr. Garib made the following comments to her:

> (1) you are working here because you want to because
> if you would work for me I would pay you thousands of
> dollars; (2) [a]t this right moment you would work for
> me I could pay you thousands of [d]ollars; (3) [i]f
> you would be with me I would no[t] let you have this
> grey hair you have because I would pay for your
> hairdressing; (4) your husband is not taking good care
> of you, if you would be with me I would take really
> good care of you; (5) I want to marry you and put my
> millions in your hands.

Id. In her amended complaint, Burgos-Diaz clarifies that Dr.

Garib made these and other comments "[d]uring her employment and

until her last days of work on [sic] February 2016 at [the

Hospital]." Am. Compl. 3.

Burgos-Diaz contends that she always rejected these

comments and further, that they created a "pervasive and hostile

and sexually charged working environment." Id. Burgos-Diaz

also alleges that her supervisors, Ms. Centeno and Ms. Gines, as

well as "other doctors," heard these comments and that "no one

intervene[d]." Id. Accordingly, Burgos-Diaz asserts that she

felt she had "no protection at her workplace from Dr. Garib's

unwanted sexual approaches." Id.

---

Garib was not an "employee" of the Hospital, but rather
"provided professional services to [the Hospital] as the Sub-
director of Quality and Compliance and as the Interim Head of
Internal Medicine." Id.

The situation "escalated" when Burgos-Diaz's direct
supervisor, Ms. Gines, and "other workers" made comments "each
and every time" Dr. Garib came to Burgos-Diaz's work station,
such as: "(1) here comes your boyfriend; (2) what are you going
to do with him?" Id. Burgos-Diaz asserts that she "feared for
her safety at work and from retaliation." Id. at 4. Burgos-
Diaz also contends that as a result of the alleged harassment,
"some physicians filed a complaint against Dr. Garib." Id.

On or around October 2015, "Ms. Torres, Ms. Mulero, and Ms.
Santiago, all from the Hospital's nurse department," interviewed
Burgos-Diaz. Id. During the meeting, Burgos-Diaz told her
interviewers about Dr. Garib's conduct and further, that Ms.
Gines had "complete knowledge" about the harassment and took
part in it. Id. Ms. Mulero requested that Burgos-Diaz submit a
written complaint, and after Burgos-Diaz did so, Ms. Begoña, the
Hospital's Human Resources manager, summoned Burgos-Diaz to a
meeting. Id. Ms. Begoña's "only suggestion to deal with the
situation was to offer [Burgos-Diaz] to have a meeting with Dr.
Garib . . . ." Id. Burgos-Diaz told Ms. Begoña that this was
"not the proper manner" to deal with the situation. Id.

Burgos-Diaz alleges that after the meeting, Dr. Garib's and
Ms. Gines's conduct "continued unfettered until [Burgos-Diaz's]
last days of work." Id. at 5. Between January and February
2016, Burgos-Diaz contends that on several occasions Dr. Garib

"ask[ed] her to go out with him while loosening his bow tie."
Id. Burgos-Diaz also alleges that Dr. Garib made comments to
her about his time in federal prison to intimidate her. Id. at
6. Burgos-Diaz further claims that Ms. Gines "began to take
retaliatory actions" by "altering [Burgos-Diaz's] time
attendance registrations, work shifts and work schedules,
assigning to [her] the most difficult tasks, assigning [her] to
work [sic] during the weekends without any sort of justification
and by not following the normal procedure" for shift assignments
Id. at 5.

Consequently, Burgos-Diaz alleges that she "felt depressed
and without any protection at work," "would arrive at work
crying and each working day was more difficult to conclude," and
"had no other option than to resign from her employment at the
Hospital [in] February 2016." Id. at 6. After leaving the
Hospital, Burgos-Diaz claims that she filed an Equal Employment
Opportunity Commission ("EEOC") Complaint on June 21, 2016 and
received a Notice of Right-to-Sue from the Civil Rights Division
of the federal Department of Justice on December 19, 2016. Id.
at 2. Burgos-Diaz alleges, therefore, that "all applicable
administrative procedures have been exhausted." Id.

## II. ANALYSIS

Dr. Garib moves to dismiss the amended complaint in its
entirety for failure to state a claim on which relief can be

granted.  Dr. Garib's Second Mot. Dismiss ¶ 43.  Dr. Garib's

motion presents three arguments.  First, he claims that Burgos-

Diaz failed to show in her amended complaint that the applicable

statute of limitations does not bar her Puerto Rico law claims.

Id. ¶¶ 6-8.  Second, he alleges that Burgos-Diaz's factual

allegations are not "overtly sexual in nature" and therefore do

not "rise to the level of a sexual harassment claim."  Id. ¶ 39.

Third, he argues that Burgos-Diaz failed to plead sufficient

factual allegations to "cure the pleading deficiency" and state

a claim for relief under Rule 8(a)(2) of the Federal Rules of

Civil Procedure.  Id. ¶ 13.

     To survive Dr. Garib's motion to dismiss, Burgos-Diaz's

amended complaint must contain factual allegations of unlawful

conduct that (a) occurred after January 19, 2016, and (b)

entitles Burgos-Diaz to relief under Puerto Rico's sexual

harassment statute, 29 P.R. Laws Ann. §§ 155 et seq. ("Law 17"),

and its gender discrimination statute, 29 P.R. Laws Ann. §§ 146

et seq. ("Law 100").  While this is a close case, Burgos-Diaz's

amended complaint sets forth sufficient factual allegations to

cure the pleading deficiency in her original complaint.

     **A.   Standard of Review**

     Under Rule 8(a)(2) of the Federal Rules of Civil Procedure,

Burgos-Diaz's amended complaint must contain a "short and plain

statement of the claim showing that the pleader is entitled to

relief." Specifically, the amended complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The "plausibility" requirement calls for "enough fact to raise a reasonable expectation that discovery will reveal evidence of the illegal [conduct]." Ocasio–Hernández v. Fortuno-Burset, 640 F.3d 1, 17 (1st Cir. 2011) (quoting Twombly, 550 U.S. at 556) (internal quotation marks omitted).

When the defendant's motion to dismiss raises a statute of limitations challenge, dismissal is appropriate if "the pleader's allegations leave no doubt that an asserted claim is time-barred." LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998) (emphasis added). When the complaint appears to comply with the statute of limitations, then the Court should permit discovery and allow the moving party to raise this argument later in a motion for summary judgment. See Rodi v. Southern New Eng. Sch. of Law, 389 F.3d 5, 17 (1st Cir. 2004) (holding that dismissal is appropriate only when the complaint and other documents show "beyond doubt" that the limitations period has run). In this, and other determinations related to the moving party's motion to dismiss, the Court may rely on its "judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

**B.   Puerto Rico Law 17 and Law 100**

Law 17, Puerto Rico's sexual harassment statute, prohibits sexual harassment in the workplace and mirrors the Title VII sexual harassment law. 29 P.R. Laws Ann. § 155b; Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 52 (1st Cir. 2000) (citing Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 854 (1st Cir. 1998)). Unlike Title VII sexual harassment, however, Law 17 provides for individual liability. Vargas v. Fuller Brush Co. of Puerto Rico, Inc., 336 F. Supp. 2d 134, 142-43 (D.P.R. 2004). In the amended complaint, Burgos-Diaz states two claims under Law 17. First, she alleges that Dr. Garib's conduct, which she characterizes as sexual harassment, created a hostile work environment ("Count I"). Am. Compl. 7. Next, she alleges that Dr. Garib's "retaliatory conduct" violated her employment rights ("Count III"). Id. at 9.

Law 100, one of Puerto Rico's employment discrimination statutes, prohibits workplace discrimination based on gender and is analogous to the Title VII discrimination law. 29 P.R. Laws Ann. § 146; Garayalde-Rijos v. Municipality of Carolina, 747 F.3d 15, 20 (1st Cir. 2014). The Supreme Court of Puerto Rico has "expressly considered the question of supervisor liability under Law 100." Miro Martinez v. Blanco Velez Store, Inc., 393 F. Supp. 2d 108, 113-14 (D.P.R. 2005) (citing Rosario Toledo v. Distribuidora Kikuet, Inc., 2000 TSPR 107 (P.R. June 29, 2000));

see also Pacheco Bonilla v. Tooling & Stamping, Inc., 281 F.
Supp. 2d 336, 339 (D.P.R. 2003).

In Rosario Toledo, the Supreme Court of Puerto Rico held
that individual liability under Law 100 does in fact "include
not only the actual employer, or the owner and the president of
the corporation, but also any other person responsible for the
illegal conduct, without any distinction." Pacheco Bonilla, 281
F. Supp. 2d at 339 (citing Rosario Toledo, 2000 TSPR 193). In
her amended complaint, Burgos-Diaz contends that Dr. Garib
unlawfully discriminated against her in violation of Law 100
("Count II"). Am. Compl. 8.

Law 17 claims must be brought within one year of "the last
act of sexual harassment." Valentín-Almeyda v. Municipality Of
Aguadilla, 447 F.3d 85, 101 (1st Cir. 2006); Matos Ortiz v.
Puerto Rico, 103 F. Supp. 2d 59, 63 (D.P.R. 2000) (collecting
cases); see also 29 P.R. Laws Ann. § 155m. This time limitation
applies to Law 100 "by analogy." Matos Ortiz, 103 F. Supp. 2d
at 63 (citing P.R. Laws Ann. §§ 146 et seq.). The First Circuit
recently observed that the "limitations period begins to run one
day after the date of accrual." Centro Medico del Turabo, Inc.
v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005). While
"a claim ordinarily accrues 'when the plaintiff knows, or has
reason to know, of the injury on which the action is based,'"
id. (quoting Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 353

(1st Cir. 1992)), if the plaintiff "can also show that at least one act in the series occurred within the limitations period, the suit may be considered timely as to all the acts," id.

In the amended complaint, Burgos-Diaz alleges that "[o]n several instances between January and February of 2016 . . . [Dr. Garib] approached her and ask[ed] her to go out with him while loosening his bow tie so that [Burgos-Diaz] could see his white gold neck chain." Am. Compl. 5. Burgos-Diaz also contends that "[d]uring these months of January and February," Dr. Garib spoke to her about his personal contacts in federal prison, which she "perceived as intimidation." Id. at 5-6. Dr. Garib claims that these allegations cannot "cure the pleading deficiency," see Dr. Garib's Second Mot. Dismiss ¶ 13, because (1) they do not specifically identify which, if any, actions occurred after January 19, 2016, id. ¶ 36; (2) the actions they describe are not "overtly sexual in nature," id. ¶ 39; and (3) they constitute "speculative or inferential" claims which are not actionable as a matter of law, id. ¶ 32.

Courts in the First Circuit have consistently recognized that Law 17 and Law 100 "serve virtually identical purposes and outlaw virtually identical behaviors." Miro Martinez, 393 F. Supp. 2d at 114; see also Valentín-Almeyda, 447 F.3d at 96. In deference to this principle of statutory interpretation, the

merits of Dr. Garib's motion to dismiss will be analyzed with
respect to all three claims against him.  Am. Compl. 6-9.

### 1.  Statute of Limitations

Dr. Garib first argues that Burgos-Diaz's claims under Law
17 and Law 100 should be dismissed because Burgos-Diaz failed to
"pinpoint conduct within the applicable statute of limitations .
. . after January 19th, 2016" in her amended complaint.  Dr.
Garib's Second Mot. Dismiss ¶ 31.  On July 14, 2017, the Court
instructed Burgos-Diaz to set forth specific allegations of
conduct that took place after January 19, 2016.  Order Mot.
Dismiss.  The amended complaint provides more specific examples
of Dr. Garib's alleged harassment, see Am. Compl. 3-5, but it
does not provide specific dates to demonstrate, beyond all
doubt, that the alleged conduct falls within the statute of
limitations.

Burgos-Diaz, however, is not required under Rodi, 389 F.3d
at 17, to prove beyond all doubt that her claims are within the
statute of limitations to survive dismissal under Rule 12(b)(6).
In Centro Medico, the First Circuit held that dismissal is only
appropriate "if it is transparently clear that the complaint, in
light of the facts alleged . . . 'leave[s] no doubt that an
asserted claim is time-barred.'"  406 F.3d at 6 (quoting
LaChapelle, 142 F.3d at 509).  Applying this test to the amended
complaint, Burgos-Diaz's allegation that Dr. Garib "ask[ed] her

to go out with him while loosening his bow tie" on "several instances between January and February of 2016," Am. Compl. 5, does not, on its face, leave "no doubt" that Burgos-Diaz's claims are time-barred. See LaChapelle, 142 F.3d at 509.

Although Burgos-Diaz failed to identify any specific dates in connection with her claims, a plain reading of the phrase "several instances between January and February" suggests that at least one instance of the alleged conduct occurred in February 2016. This inference is consistent with Burgos-Diaz's repeated assertion that Dr. Garib's "sexual approaches" continued "until her last days of work [in] February 2016." Am. Compl. 3. "[A]ccept[ing] as true all well-pleaded facts alleged in the complaint and draw[ing] all reasonable inferences therefrom in the pleader's favor," Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011), it is "plausible" that discovery will reveal more evidence that at least some of the conduct described in the amended complaint took place in February 2016. Accordingly, the Court rejects Dr. Garib's challenge and holds that Burgos-Diaz's claims are not barred by the statute of limitations.

### 2. Burgos-Diaz's EEOC Complaint

Burgos-Diaz alleges that she filed an EEOC complaint on June 21, 2016. Pl.'s Second Opp'n 9. At the motion hearing on July 14, 2017, the Court stated that Burgos-Diaz must develop

this argument in order to allege that her EEOC complaint tolled the statute of limitations.  Order Mot. Dismiss.  The amended complaint merely states that Burgos-Diaz filed an EEOC complaint, but Burgos-Diaz later claims that "any argument related to the tolling effect by EEOC charge number 515-5016-00384 . . . regarding Dr. Garib is moot."  Pl.'s Third Opp'n 10.

Under Puerto Rico law, the statute of limitations is tolled by the filing of an extrajudicial administrative complaint. Valentín-Almeyda, 447 F.3d at 101 (citing 31 P.R. Laws Ann. § 5303); see also Gerald v. University of Puerto Rico, 707 F.3d 7, 27 (1st Cir. 2013) ("In Puerto Rico the filing of an EEOC complaint alleging sex discrimination in violation of Title VII tolls the statute of limitations on equivalent state law claims . . . .") (citing Huertas-Gonzalez v. University of Puerto Rico, 520 F. Supp. 2d 304, 316–17 (D.P.R. 2007)).

In Huertas-Gonzalez, however, the district court dismissed a Law 17 claim against one of the co-defendants because the plaintiff did not notify him of the EEOC charge.  520 F. Supp. 2d at 317.  There, the court held that "the filing of an administrative complaint before the EEOC will not toll the statute of limitations for federal causes of action . . . , for example claims under Law 17 . . . unless the Defendants have been notified of the filing of said EEOC claim."  Id. Similarly, the First Circuit held in Gerald that the record must

contain "critical information," such as "who was named, what was alleged, or even the exact date the EEOC complaint was filed," before a court may determine whether the statute of limitations should be tolled.  707 F.3d at 27-28.

Here, Burgos-Diaz has failed to provide any more "critical information" in her amended complaint.  The Court gave Burgos-Diaz the opportunity to clarify her pre-hearing claim that Dr. Garib was "well aware" of the EEOC complaint against him, see Pl.'s Second Opp'n 9, but she has declined to provide any more details in her amended complaint and subsequent response to Dr. Garib's motion to dismiss.  Even after drawing all reasonable inferences in the pleader's favor, Santiago, 655 F.3d at 72, Burgos-Diaz has not alleged in the amended complaint that Dr. Garib was notified of the filing of the EEOC complaint. Following Gerald and Huertas-Gonzalez, therefore, for Burgos-Diaz to survive a statute of limitations challenge to Law 17, she must show that the acts of sexual harassment continued within the one-year statutory period.

### 3.    Allegations of "Sexual" Misconduct

Dr. Garib next argues that the Court should dismiss the Puerto Rico law claims because the factual allegations set forth in the amended complaint are not "overtly sexual in nature." Dr. Garib's Second Mot. Dismiss ¶ 39.  Dr. Garib cites Sprague v. Thorn Americas, Inc., 129 F.3d 1355 (10th Cir. 1997), and

<u>White</u> v. <u>Midwest Office Tech., Inc.</u>, 5 F. Supp. 2d 936 (D. Kan. 1998), in support of his argument, Dr. Garib's Second Mot. Dismiss ¶ 40, but these authorities from the Tenth Circuit are distinguishable from the present case.

In <u>Sprague</u>, the plaintiff's Title VII claims were based on five separate incidents of "unpleasant and boorish conduct." 129 F.3d at 1366.  Here, Burgos-Diaz describes at least seven "sexually charged" comments that Dr. Garib allegedly made in reference to, among other things, her physical appearance, Am. Compl. 3 ("I would not let you have this grey hair you have because I would pay for your hairdressing."), her husband, <u>id.</u> ("[Y]our husband is not taking good care of you, if you would be with me I would take really good care of you."), and her salary, <u>id.</u> ("[I]f you work for me I could pay you thousands of [d]ollars.").  In contrast to <u>Sprague</u>, Burgos-Diaz contends that all of Dr. Garib's comments were made while she was at work. <u>Contra</u> <u>Sprague</u>, 129 F.3d at 1366 ("The incident at Sprague's wedding reception was the most serious, but it occurred at a private club, not in the workplace.").  Moreover, Dr. Garib's comments were allegedly accompanied by requests to "have a few drinks," Am. Compl. 3, "send him photos," <u>id.</u> at 5, "go out with him," and "marry [him]," <u>id.</u>  The defendant in <u>Sprague</u> did not make these kinds of requests, nor did the plaintiff claim that the defendant actively desired a physical relationship with her.

[17]

The facts in White are similarly distinguishable from the present case. There, the plaintiff submitted evidence of three "overtly sexual" incidents, but she did not allege that the defendant made "any unwelcome sexual advances or inquiries into her personal sexual preferences or practices." White, 5 F. Supp. 2d at 948. Here, Burgos-Diaz claims that Dr. Garib told her "now that you are calling me at night I want you to know that I am a night person and I like to do things at night." Am. Compl. 5. Dr. Garib allegedly made this remark, as well as other "sexually charged comments," to Burgos-Diaz despite knowing that she was married and that she "always reject[ed]" his advances. Id. at 3. In Valentín-Almeyda, the First Circuit held that a jury was entitled to find the defendant liable for, among other things, sexual harassment after the plaintiff "continued to rebuff" the defendant's claims that he wanted to "marry her" and that she was "his."[5] 447 F.3d at 91.

Although Dr. Garib cites Sprague and White in support of his motion to dismiss, in both cases the plaintiffs set forth sufficient factual allegations of sexual harassment to survive

---

[5] In addition to these verbal "approaches," the First Circuit concluded that the defendant's "constant efforts at physical proximity, his repeatedly cruising by [the plaintiff]'s house," and his threat to retaliate if the plaintiff "would not react more affectionately to his unwanted advances" together constituted sufficient evidence of sexual harassment under Law 17 and Title VII. Valentin-Almeyda, 447 F.3d at 96.

dismissal under Rule 12(b)(6).  Indeed, the First Circuit's more recent decision in Tang v. Citizens Bank, N.A., 821 F.3d 206, 212 (1st Cir. 2016) is controlling here, in that it mandated a trial where similarly sexually charged, but arguably ambiguous, conduct was supported by affidavit.  See generally Sandra F. Sperino & Suja A. Thomas, Unequal: How America's Courts Undermine Discrimination Law (2017) (concluding juries are best able to resolve discrimination cases); Christina L. Boyd, Lee Epstein & Andrew D. Martin, Untangling the Causal Effects of Sex on Judging, 54 Am. J. Pol. Sci. 389 (2010); Hon. John McConnell, Judging a Book: McConnell Reviews 'Unequal', Law 360 (Oct. 31, 2017, 1:31 PM), https://www.law360.com/articles/971233 ("Are judges marginalizing the Seventh Amendment when they choose to grant summary judgment?").  Accordingly, after drawing all reasonable inferences in Burgos-Diaz's favor, Santiago, 655 F.3d at 72, the Court rejects Dr. Garib's claim that the allegations contained in the amended complaint were not sufficiently "sexual in nature" to state a plausible claim for relief under Law 17 and Law 100.

### 4. "Speculative or Inferential" Claims

Dr. Garib's third challenge rests on the allegedly "bald" and "conclusory" nature of the claims set forth in Burgos-Diaz's amended complaint.  Dr. Garib's Second Mot. Dismiss ¶¶ 31-34. Dr. Garib cites several federal circuit cases, see Aulson v.

Blanchard, 83 F.3d 1 (1st Cir. 1996); Toone v. Wells Fargo Bank, N.A., 716 F.3d 516 (10th Cir. 2013); Bissessur v. Indiana Univ. Bd. of Trs., 581 F.3d 599 (7th Cir. 2009), in support of his argument that "a repleader needs to explain how a subsequent revision would cure the pleading deficiency." Dr. Garib's Second Mot. Dismiss ¶ 13. This argument, however, misconstrues the standard of review. Under Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999), the Court must review Burgos-Diaz's amended complaint de novo and evaluate the sufficiency of her claims under the same "plausibility" standard that the Court applied to the original complaint. See also Metropolitan Prop. & Cas. Ins. Co. v. Savin Hill Family Chiropractic, Inc., No. 15-12939-LTS, 2017 U.S. Dist. LEXIS 113972, at *25 (D. Mass. July 21, 2017) (Dein, M.J.).

Dr. Garib cites Toone to emphasize that dismissal is appropriate if the plaintiff's complaint alleges "no facts from which one could infer . . . misconduct." 716 F.3d at 521. This standard is consistent with the First Circuit principle that an order of dismissal may stand if the factual allegations "if proven, will not justify recovery." Aulson, 83 F.3d at 3 (emphasis added). Dr. Garib's argument, however, fails here because the factual allegations set forth in the amended complaint, if proven, would justify recovery under Law 17 and Law 100. Burgos-Diaz claims that Dr. Garib "on several

instances . . . asked her to go out with him while loosening his bow tie" and made other "sexual innuendos" directly to her while she was working at the Hospital at night.  Am. Compl. 5.  She further claims that these "sexual approaches . . . never cease[d] while she continued working at the Hospital." Id.  She alleges that this treatment caused her to feel "excruciating mental anguish and depression," and eventually led her to resign from the Hospital.  Id. at 6.

These allegations, if proven, could constitute evidence of a hostile work environment under Law 17 and Law 100.  See Acosta v. Harbor Holdings & Operations, Inc., 674 F. Supp. 2d 351, 360 (D.P.R. 2009) (holding that a hostile work environment, which could result from "sexual remarks, innuendoes, ridicule and intimidation," is a fact-specific inquiry for the jury (quoting Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 19 (1st Cir. 2002))).  Accordingly, Dr. Garib was wrong to characterize Burgos-Diaz's factual allegations as "speculative or inferential" claims which are not actionable as matter of law.  Dr. Garib's Second Mot. Dismiss ¶ 32.  The Court, therefore, rejects Dr. Garib's third challenge to the amended complaint.

**CONCLUSION**

For the reasons stated above, the Court DENIES Dr. Garib's motion to dismiss [ECF No. 18].  Burgos-Diaz's amended complaint contains sufficient factual allegations under Puerto Rico Law 17

and Law 100 to survive Rule 12(b)(6) dismissal.  These claims,

on their face, plausibly fall within the statute of limitations.

**SO ORDERED.**


/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE
